**Michigan Supreme Court**
**Lansing, Michigan**

# Opinion

Chief Justice:
Maura D. Corrigan

Justices:
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Clifford W. Taylor
Robert P. Young, Jr.
Stephen J. Markman

**FILED JULY 27, 2004**

PEOPLE OF THE STATE OF MICHIGAN,

   Plaintiff-Appellee,

v                                                No. 122998

LORD SHAWN RUSSELL,

   Defendant-Appellant.

_____

BEFORE THE ENTIRE BENCH

YOUNG, J.

In this case, we granted leave to appeal to consider whether a defendant may, by conduct alone, "unequivocally" waive his Sixth Amendment Right to counsel and elect to proceed pro se. We need not reach that question in this case because a review of the record reveals that defendant clearly and unequivocally declined self-representation. We reverse the decision of the Court of Appeals and remand for a new trial.

I. FACTS AND PROCEDURAL HISTORY

Defendant was charged with possession with intent to deliver less than fifty grams of both cocaine and heroin.[1] At the beginning of trial, defendant informed the trial court that he wanted his trial counsel, Damian Nunzio, removed and new trial counsel appointed.[2]

The trial court did not grant defendant's request, but noted that he "would entertain" the request if defendant presented "some valid reason" to appoint substitute counsel other than "personality difficulties." Defendant offered no such explanation. After refusing to grant defendant's request, the trial court offered defendant the following four options:

> [O]ur alternatives here are basically these. You may, if you have made arrangements on your own, bring in your own lawyer at your own expense and hire anybody you want, and I will allow that lawyer to substitute right now and we'll go from here.
>
> Option number two, we can go forward with Mr. Nunzio, the second lawyer that's been provided for you at government expense, and try this case on the merits. I would strongly suggest that, if Mr. Nunzio thinks you have a valid defense, that you consult with him and work

---

[1]　MCL 333.7401(2)(a)(iv).

[2]　Mr. Nunzio was defendant's second appointed attorney. Defendant's first appointed attorney withdrew after defendant complained about counsel's representation.

with him on it because he's a man that knows how to present such a defense.

Or number three, you may decide to serve as your own counsel and represent yourself. I caution you strongly against the third course because obviously a trial involves issues of complicated legal procedure and, unless you are legally trained, and I don't know whether you are or not but I suspect you are not, there are many pitfalls there for the unwary.

And that leads us, I suppose, to option four, which is sort of a variation on option number three, in which you provide your own defense but Mr. Nunzio would be available to consult with you and provide you assistance as to technical legal points when you need counsel.[3]

After defendant continued to indicate that he did not "feel comfortable" with his appointed attorney's representation, the trial court reminded defendant of his other available options—defendant could retain counsel or he could represent himself:

The Court: And, while I would not advise it, I will certainly guard your rights and see to it that you have the opportunity to present your own defense, if that's your wish.

Defendant: Well, that's putting words in my mouth. I—

The Court: Well, then maybe you should put words in your mouth and tell me what you want.

---

[3]    Thus, two of the four options presented to defendant involved forms of self-representation.

Defendant: I told you. I don't want Mr. Nunzio as my attorney.

The Court: . . . So, your options are really kind of limited.

Defendant: The State has the obligation to give me representation.

At a later point in the proceedings, the following exchange occurred:

The Court: . . . And if you can't cooperate with the man, then you can try the case yourself, and that's fine. You have a constitutional right to do it. I don't think it's a good idea, but I'm here to guarantee your constitutional rights. And if you want to try your case yourself, by goodness, that's what we're going to do.

Defendant: Well, that's what you keep insisting that I do, *and I'm telling you that I need competent counsel . . . .* [Emphasis added.]

Although the trial court then gave defendant several more opportunities to select among the four proffered options, defendant continued to reject all of them. The trial court then empanelled the jury and asked defendant if he had any questions for the panel. Defendant stated:

Yes. Ladies and gentlemen, this is something totally new for me. I'm being forced into this situation . . . .

I requested the Court appoint new counsel for me, and they said, for some reason being that we're here and they don't see the difference—any differences between me and Mr. Nunzio. So they

4

forced me to go on with this trial alone by myself.

After a four-day trial, defendant was convicted of both charges and sentenced to consecutive prison terms of 2½ to 40 years for each conviction.

The Court of Appeals affirmed defendant's convictions in a published opinion. The panel concluded that defendant implicitly "made his unequivocal choice" to proceed in propria persona "by his own conduct" when he continued to reject appointed counsel's representation.[4]

## II. STANDARD OF REVIEW

We review for clear error the trial court's factual findings surrounding a defendant's waiver. However, to the extent that a ruling involves an interpretation of the law or the application of a constitutional standard to uncontested facts, our review is de novo.[5]

## III. ANALYSIS

### A. THE FEDERAL REQUIREMENTS FOR SELF-REPRESENTATION

The Sixth Amendment provides that the accused in a criminal prosecution "shall enjoy the right . . . to have

---

[4]   254 Mich App 11, 17; 656 NW2d 817 (2002).

[5]   See *People v Attebury*, 463 Mich 662, 668; 624 NW2d 912 (2001); *People v Daoud*, 462 Mich 621, 629-630; 614 NW2d 152 (2000).

the Assistance of counsel for his defence."  US Const, Am VI.[6]  This requirement was made applicable to the states through the Due Process Clause of the Fourteenth Amendment.[7]  The right to counsel is considered fundamental because it is essential to a fair trial and attaches at the trial stage, which is clearly a critical stage of the proceedings.[8]  While a defendant may choose to forgo the assistance of counsel at trial, any waiver of the right to counsel must be knowing, voluntary, and intelligent.[9]  In addition, it is a long-held principle that courts are to make every reasonable presumption *against* the waiver of a

---

[6]  Likewise, Const 1963, art 1, § 20 provides that the accused in a criminal prosecution "shall have the right . . . to have the assistance of counsel for his . . . defense."  Our Michigan Constitution is not at issue here because the federal Supremacy Clause, US Const, art VI, cl 2, requires that we apply the federal constitutional analogue to the degree that our Constitution provides less protection to a criminal defendant.  *California v Ramos*, 463 US 992; 103 S Ct 3446; 77 L Ed 2d 1171 (1983).  This case does not present an opportunity to discern whether our Constitution provides a right of self-representation that is greater than its federal counterpart.

[7]  *Gideon v Wainwright*, 372 US 335; 83 S Ct 792; 9 L Ed 2d 799 (1963).

[8]  *Id.*

[9]  *Iowa v Tovar*, 541 US ___; 124 S Ct 1379; 158 L Ed 2d 209 (2004); *Godinez v Moran*, 509 US 389; 113 S Ct 2680; 125 L Ed 2d 321 (1993); *Patterson v Illinois*, 487 US 285, 292 n 4; 108 S Ct 2389; 101 L Ed 2d 261 (1988).

fundamental constitutional right,[10] including the waiver of the right to the assistance of counsel.[11]

In *Faretta v California*,[12] the United States Supreme Court held that a defendant "has a constitutional right to proceed without counsel when he voluntarily and intelligently *elects* to do so."[13] While the *Faretta*

---

[10]  The principle that every reasonable presumption should be indulged against the waiver of a fundamental constitutional right has a long-standing pedigree in federal constitutional law. See *Hodges v Easton*, 106 US (16 Otto) 408, 413; 1 S Ct 307; 27 L Ed 169 (1882) ("It has been often said by this court that the trial by jury is a fundamental guaranty of the rights and liberties of the people. Consequently, every reasonable presumption should be indulged against its waiver.").

[11]  *Johnson v Zerbst*, 304 US 458; 58 S Ct 1019; 82 L Ed 1461 (1938) (every reasonable presumption should be indulged against the waiver of counsel); *Michigan v Jackson,* 475 US 625, 633; 106 S Ct 1404; 89 L Ed 2d 631 (1986); *Martinez v Court of Appeal of California*, 528 US 152, 161; 120 S Ct 684; 145 L Ed 2d 597 (2000)(noting that there is a "'strong presumption against'" waiver of counsel)(citation omitted); *People v Adkins (After Remand)*, 452 Mich 702; 551 NW2d 108 (1996).

[12]  422 US 806; 95 S Ct 2525; 45 L Ed 2d 562 (1975). In *Faretta*, the majority identified a "nearly universal conviction" that forcing representation on unwilling defendant "is contrary to his basic right to defend himself *if he truly wants to do so." Id.* at 817 (emphasis added).

[13]  *Id.* at 807 (emphasis added). See also *Martinez, supra* at 154. In Michigan, the right of self-representation is a right explicitly conferred in our Constitution. See Const 1963, art 1, § 13. This right has been afforded to the citizens of Michigan since 1850. See Const 1850, art 6, § 24.

majority noted that the framers of the Constitution never imagined that the right of self-representation "might be considered inferior to the right of assistance of counsel,"[14] the United States Supreme Court has also noted that the "right to self-representation is not absolute."[15] Indeed, because a defendant automatically enjoys the right to the assistance of counsel,[16] and the right of self-representation and the right to counsel are mutually exclusive, a defendant must *elect* to conduct his own defense "'voluntarily and intelligently,'"[17] and must be made aware of the dangers and disadvantages of self-representation "in order to"[18] proceed pro se.[19]  Therefore,

---

[14]    *Faretta, supra* 832.

[15]    *Martinez, supra* at 161 (emphasis added).

[16]    The right to the assistance of counsel is automatic; assuming the right is not waived, assistance must be made available at critical stages of a criminal prosecution, regardless whether the defendant has requested it.  *United States v Wade*, 388 US 218, 223-227; 87 S Ct 1926; 18 L Ed 2d 1149 (1967); *Carnley v Cochran*, 369 US 506, 513; 82 S Ct 884; 8 L Ed 2d 70 (1962).

[17]    *Martinez, supra* at 161 (citation omitted).

[18]    *Faretta, supra* at 835 (emphasis added).

[19]    Moreover, even once properly elected, self-representation may be terminated or standby counsel appointed, over a defendant's objection.  *Faretta, supra* at 834 n 46.  Standby counsel may participate in the trial proceedings, without the express consent of the defendant,
                                        (continued…)

while the right of self-representation is a fundamental constitutional right, other interests, such as the failure to effectively waive the right to counsel or a governmental interest in "ensuring the integrity and efficiency of the trial" may in some instances outweigh the defendant's constitutional right to act as his own counsel.[20] In sum, although the right to counsel and the right of self-representation are both fundamental constitutional rights, representation by counsel, as guarantor of a fair trial, "is the standard, not the exception,"[21] in the absence of a proper waiver.

### B. MICHIGAN'S APPLICATION OF THE FEDERAL STANDARD

In *People v Anderson*,[22] this Court applied the *Faretta* standard for self-representation and established

---

(…continued)
as long as that participation does not "seriously undermin[e]" the "appearance before the jury" that the defendant is representing himself. *McKaskle v Wiggins*, 465 US 168, 187; 104 S Ct 944; 79 L Ed 2d 122 (1984).

[20] *Martinez, supra* at 162.

[21] *Id.* at 161. See also *United States v Martin*, 25 F3d 293, 295 (CA 6, 1994) ("While the right to self-representation is related to the right to counsel, the right to self-representation is grounded more in considerations of free choice than in fair trial concerns.").

[22] 398 Mich 361; 247 NW2d 857 (1976). See also *People v Dennany*, 445 Mich 412; 519 NW2d 128 (1994).

requirements regarding the judicial inquest necessary to effectuate a valid waiver and permit a defendant to represent himself. Upon a defendant's initial request to proceed pro se, a court must determine that (1) the defendant's request is unequivocal, (2) the defendant is asserting his right knowingly, intelligently, and voluntarily through a colloquy advising the defendant of the dangers and disadvantages of self-representation, and (3) the defendant's self-representation will not disrupt, unduly inconvenience, and burden the court and the administration of the court's business.

In addition, a trial court must satisfy the requirements of MCR 6.005(D), which provides in pertinent part as follows:

> The court may not permit the defendant to make an initial waiver of the right to be represented by a lawyer without first
>
> (1) advising the defendant of the charge, the maximum possible prison sentence for the offense, any mandatory minimum sentence required by law, and the risk involved in self-representation, and
>
> (2) offering the defendant the opportunity to consult with a retained lawyer or, if the defendant is indigent, the opportunity to consult with an appointed lawyer.

In *Adkins*, this Court clarified the scope of judicial inquiry required by *Anderson* and MCR 6.005(D) when

10

confronted with an initial request for self-representation.

*Adkins* rejected a "litany approach" in favor of a "substantial compliance" standard:

> We hold, therefore, that trial courts must substantially comply with the aforementioned substantive requirements set forth in both *Anderson* and MCR 6.005(D). Substantial compliance requires that the court discuss the substance of both *Anderson* and MCR 6.005(D) in a short colloquy with the defendant, and make an express finding that the defendant fully understands, recognizes, and agrees to abide by the waiver of counsel procedures. The nonformalistic nature of a substantial compliance rule affords the protection of a strict compliance rule with far less of the problems associated with requiring courts to engage in a word-for-word litany approach. Further, we believe this standard protects the "vital constitutional rights involved while avoiding the unjustified manipulation which can otherwise throw a real but unnecessary burden on the criminal justice system."

> Completion of these judicial procedures allows the court to consider a request to proceed in propria persona. *If a judge is uncertain regarding whether any of the waiver procedures are met, he should deny the defendant's request to proceed in propria persona, noting the reasons for the denial on the record. The defendant should then continue to be represented by retained or appointed counsel,* unless the judge determines substitute counsel is appropriate.[23]

Under *Adkins*, if the trial court fails to substantially comply with the requirements in *Anderson* and

---

[23]    *Adkins*, *supra* at 726-727 (emphasis added; internal citation omitted).

the court rule, then the defendant has not effectively waived his Sixth Amendment right to the assistance of counsel. In addition, the rule articulated in *Adkins* provides a practical, salutary tool to be used to avoid rewarding gamesmanship as well as to avoid the creation of appellate parachutes: if any irregularities exist in the waiver proceeding, the defendant should continue to be represented by counsel.

## C. RESOLUTION

In this case, a review of the record indicates two key facts: first, that defendant expressly rejected self-representation and, second, that defendant never voluntarily waived his Sixth Amendment right to the assistance of counsel at trial.[24] Indeed, defendant clearly sought appointment of *another* trial counsel, and defendant and the trial court engaged in a lengthy dialogue over defendant's desire to have substitute counsel appointed.

While defendant was given clear choices, defendant consistently denied that *his* choice was self-representation. Throughout his colloquy with the trial

---

[24] Because defendant clearly and unambiguously rejected self-representation, we need not address whether a defendant's desire to proceed pro se may *ever* be inferred by conduct.

court, defendant steadfastly rejected the option of proceeding to trial without the assistance of counsel.[25] Therefore, it cannot be said, as the Court of Appeals and dissenting opinions maintain, that defendant *unequivocally* chose self-representation and voluntarily waived his Sixth Amendment right to counsel.[26]

---

[25] Defendant did not have the *right* to a third appointed counselor, because no defendant is entitled to the appointed counselor of his choice. See *Wheat v United States*, 486 US 153; 108 S Ct 1692; 100 L Ed 2d 140 (1988); *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973); *People v Portillo*, 241 Mich App 540; 616 NW2d 707 (2000). Rather, the decision to permit substitution of appointed counsel is within the discretion of the trial court. *People v Hooper*, 406 Mich 978; 280 NW2d 444 (1979). In this case, defendant does not argue that the trial court abused its discretion in failing to appoint substitute counsel; rather, defendant argues before this Court that the trial court reversibly erred because defendant did not unequivocally waive his right to counsel and did not elect to represent himself.

[26] As the dissent notes, there are some federal circuit court cases holding that an unreasonable insistence on the appointment of a new attorney operates as a waiver of the right to counsel. This view is in contravention of the principle articulated in *Johnson*. Until the United States Supreme Court sees fit to distinguish or overrule *Johnson*, this Court is required to follow it. Moreover, it does not logically follow that a defendant affirmatively waives a fundamental constitutional right simply because he insists on a favorable ruling on something to which he is not entitled. Under the theory advocated by the dissent, if a defendant were to insist on empanelling only left-handed jurors, his insistence would constitute an affirmative waiver of his right to a jury trial *even if* he explicitly indicates that he *desires* a jury trial.

We believe that defendant's repudiation of self-representation was unmistakable in this case. However, to the degree that defendant's refusal to explicitly choose between continued representation by appointed counsel and self-representation created any ambiguity regarding plaintiff's desire to unequivocally waive his right to trial counsel, any ambiguity should have been resolved in favor of representation because, consistently with *Adkins* and United States Supreme Court precedent*,* courts *must* indulge every reasonable presumption against the waiver of the right to counsel.[27]

## IV. Conclusion

Because defendant unequivocally rejected self-representation and did not voluntarily waive his right to the assistance of counsel at trial, the trial court erred in requiring defendant to proceed in propria persona. The

---

[27] Because defendant's waiver of his right to the assistance of counsel at trial was not voluntary, we need not address whether defendant's waiver was knowing and intelligent. It is worth noting, however, that an effective waiver of *trial* counsel requires a more exacting waiver than that required to waive counsel at pretrial stages of the proceedings. See *Iowa v Tovar, supra,* 124 S Ct 1387-1388; 158 L Ed 2d 220-221 (requiring that a defendant "must be warned *specifically* of the hazards ahead" and that those warnings surrounding waiver of counsel at trial be "'*rigorous[ly] conveyed*")(emphasis added; citation omitted).

clear cut rule articulated by this Court in *Adkins* requires that counsel should have been retained where defendant explicitly rejected self-representation.[28]  Accordingly, the decision of the Court of Appeals is reversed and the case is remanded to the trial court for a new trial.[29]

> Robert P. Young, Jr.
> Michael F. Cavanagh
> Elizabeth A. Weaver
> Marilyn Kelly
> Clifford W. Taylor

---

[28]   In this instance, the trial court should have simply denied defendant's request to appoint another counsel and continued with the proceedings.  Defendant's *acceptance* of the trial court's discretionary ruling was not required.

[29]   The complete denial of counsel at a critical stage of a criminal proceeding is a structural error that renders the result unreliable, thus requiring automatic reversal. *Gideon v Wainwright, supra; People v Duncan*, 462 Mich 47, 51-52; 610 NW2d 551 (2000).

# STATE OF MICHIGAN

## SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

 Plaintiff-Appellee,

v               No. 122998

LORD SHAWN RUSSELL,

 Defendant-Appellant.

_____

**MARKMAN, J.** (*dissenting*).

I respectfully dissent from the majority opinion because I agree with the trial court and the Court of Appeals and believe that defendant, by his conduct alone, "unequivocally" waived his constitutional and statutory right to trial counsel. US Const, Am VI; Const 1963, art 1, § 13; MCL 763.1. Because I believe that defendant's waiver also satisfied the requirements set forth by this Court in *People v Anderson*, 398 Mich 361, 367-368; 247 NW2d 857 (1976), and MCR 6.005(D), I would affirm defendant's conviction.

Further, I respectfully urge the United States Supreme Court to consider granting certiorari in this case to clarify the operation of the presumption against the waiver

of trial counsel in *Johnson v Zerbst*, 304 US 458; 58 S Ct 1019; 82 L Ed 1461 (1938). In this case, defendant unreasonably refused to cooperate with his second court-appointed counsel, but also declined to assert that he wished to proceed pro se. Some federal courts have interpreted such conduct as constituting an effective waiver of the right to trial counsel, but the lack of clarity regarding the scope of the *Johnson* presumption continues to create constitutional uncertainty. Where a defendant unreasonably declines appointed counsel's services, the *Johnson* presumption should not remain inviolate. The right to trial counsel, the right to self-representation, and the prohibition against forcing trial counsel on an unwilling defendant intersect. Thus, courts must protect a defendant's rights while also safeguarding the integrity of the judicial process from delay tactics and gamesmanship, both of which are on display in this case. If defendant here had been *required* to retain his counsel, as the majority would require, he would now almost certainly be arguing that his right to trial counsel had been violated and that such counsel had been forced upon him against his will.

## I. BACKGROUND

Defendant was charged with possession of cocaine and heroin. At the beginning of trial, defendant informed the trial court that he wanted his trial counsel, Damian Nunzio, removed and new trial counsel appointed.[1] Among other allegations, defendant claimed that there had been miscommunications between him and Nunzio, that Nunzio had been convinced of defendant's guilt, that Nunzio had failed to give defendant certain helpful documents, and that Nunzio had failed to call certain witnesses.

The court found that defendant had failed to present "some valid reason why a different lawyer should be appointed, other than the fact that [defendant was] seeming to have personal difficulties with the leading members of the bar." The trial court denied defendant's motion to appoint new counsel, and informed defendant that his options were as follows:

> You may, if you have made arrangements on your own, bring in your own lawyer at your own expense and hire anybody you want, and I will allow that lawyer to substitute right now and we'll go from here.

---

[1] The trial court permitted defendant's first appointed trial counsel, Paul Mitchell, to withdraw after defendant complained about the manner in which he represented defendant.

Option number two, we can go forward with Mr. Nunzio, the second lawyer that's been provided for you at government expense, and try this case on the merits. I would strongly suggest that, if Mr. Nunzio thinks you have a valid defense, that you consult with him and work with him on it because he's a man that knows how to present such a defense.

Or number three, you may decide to serve as your own counsel and represent yourself. I caution you strongly against the third course because obviously a trial involves issues of complicated legal procedure and, unless you are legally trained, and I don't know whether you are or not but I suspect you are not, there are many pitfalls there for the unwary.

And that leads us, I suppose, to option four, which is sort of a variation on option number three, in which you provide your own defense but Mr. Nunzio would be available to consult with you and provide you assistance as to technical legal points when you need counsel. That pretty much exhausts the field, as far as I can determine at this moment, for what we might do about proceeding here today.

Defendant insisted that he did not want Nunzio to represent him because, "Mr. Nunzio has stated that he doesn't believe that I'm innocent." Nunzio denied this allegation.

The trial court explained to defendant that:

[E]ven if we were to assume arguendo that [Nunzio] did say that, and I don't believe it for a minute, it would not be germane. A lawyer represents a client by presenting his defense under the law.

* * *

4

It is not necessary that Mr. Nunzio believe you are innocent in order to represent you and present the very best defense available to you under the law. So, essentially we're sparring at shadows here, and this discussion is not getting us anywhere.

Defendant continued to insist that he did not want Nunzio to represent him. The trial court responded:

I think I've given you the options as I understand them, and I'm prepared to go with whichever one you feel is the appropriate one to follow at this particular time.

Defendant replied, *"Well, I've expressed mine. "I don't want Mr. Nunzio to represent me."* (Emphasis added.)

The court then explained that only three options remained for defendant:

Your options are that you may bring in counsel of your own choosing, which you've had many months to do and I don't see anybody sitting here, so I don't assume that [is] going to happen; or you may represent yourself in which case I will allow Mr. Nunzio to be available to provide you with legal counsel on technical and procedural points when you wish to consult with him.

The trial court then warned defendant about the dangers of self-representation, stating:

If you wish to do that, I will certainly proceed in that fashion. I would not personally advise that you do that, but that's your right.

* * *

I should advise you that there is an ancient adage in the law, for good reason, that a man who acts as his own counsel has a fool for a client.

5

> The corollary to the rule is that he also has a
> fool for a lawyer, but, as a practical matter, it
> all winds up in the same place.
>
> My guess is that you will not fare well in
> that approach, but you have the right to take
> that approach if you wish to do it.

Defendant replied, "Well, that's putting words in my mouth." The trial court responded, "Well then maybe you should put words in your mouth and tell me what you want." Defendant responded, "Well, I told you. I don't want Mr. Nunzio as my attorney."

The trial transcript contains four more pages of dialogue between defendant and the trial court in which, although defendant continues to request that a new attorney be appointed for him, the trial court continued to deny such request. The court eventually states:

> What I really want to know is how you want
> to proceed so we can get started here. And I'm
> willing to take a recess and let you speak to Mr.
> Nunzio, or if you want don't want to speak to Mr.
> Nunzio, I'm willing to take a recess and let you
> contemplate the matter. But the fact is that we
> need to know what it is that you wish to do and
> within the range of the options, which I think
> I've pretty clearly delineated for you. I'm
> prepared to accommodate you.
>
> Now, do you wish to consult with Mr. Nunzio
> or mull this over for a few minutes, or are you
> ready to make an alternative choice at this time?

Defendant answered, "Your Honor, I thought I made myself clear here." The trial court replied, "Well

6

apparently not because I haven't heard you make any choice . . . I just need to know which of those you wish to do."

The transcript contains another six pages of dialogue between the trial court and defendant in which defendant complained about Nunzio's performance. After the trial court found all of defendant's allegations to be completely unfounded, the following exchange between the trial court and defendant occurred:

> *Defendant*: I don't—I don't want any contact with Mr. Nunzio, and I expressed that to you. I don't want Mr. Nunzio to have anything to do with anything in my case. . . . *There's no way that I will let him try to defend me.*
>
> * * *
>
> All right. Well, I just want it noted that I have stated the conflict between me and attorney Nunzio, and the statements that Mr. Nunzio has made in regards to me and my case, and there's *no way that I would feel comfortable with him having anything to do with the defense on my behalf*. And I'm requesting that you remove him from my case.
>
> *Court*: All right. Well, then, I will inform the jury that you have chosen to represent yourself and that Mr. Nunzio is available as your legal advisor. Now, are you ready to proceed or do you wish to take a few moments to get yourself organized.
>
> *Defendant*: (No verbal response)
>
> *Court*: Mr. Russell that's a question to you.
>
> *Defendant:* I've requested to you, Your Honor, *I said that I don't want Mr. Nunzio*

> *involved in nothing of my defense*, and I am requesting of this court to appoint counsel.
>
> *Court*: Well, we have appointed counsel, Mr. Russell, and he sits next to you at this particular moment. Now, you can either work with Mr. Nunzio or demonstrate some reasonable basis why he should be removed, which you have not done, or else we're going to start this case and you can represent yourself.
>
> * * *
>
> Inasmuch as you apparently have not made arrangements for alternate counsel, I suggest that you strongly consider going forward with the very capable lawyer that you have been provided. Failing that, I will protect your right to represent yourself. But this is the day and time of proceeding and we've run out of time. We've run out of options. So I suggest that you confine yourself to what we've discussed. [Emphasis added.]

Although the trial court then gave defendant several additional opportunities to select an option,[2] defendant continued to refuse to do so, at which time the trial court empanelled the jury and asked defendant if he had any questions for the panel. Defendant stated:

> Yes. Ladies and gentlemen, this is something totally new for me. I'm being forced into this situation . . . .
>
> I requested the Court appoint new counsel for me, and they said, for some reason being that we're here and they don't see the difference—any

---

[2] In order to accord defendant adequate opportunity to consult with Nunzio regarding the four options, the trial court took two recesses, the first for twenty minutes and the second for one-and-a-half hours.

8

> differences between me and Mr. Nunizo. So they forced me to go on with this trial alone by myself.

After a four-day trial, defendant was convicted on both charges and sentenced to consecutive prison terms of two-and-a-half to forty years on each count. Although the Court of Appeals remanded this case for correction of the presentence investigation report and resentencing, it affirmed defendant's convictions, concluding that defendant, by his conduct alone, had demonstrated his choice to represent himself at trial.[3]

## II. Analysis

The United States Supreme Court has held that the right to self-representation is guaranteed by the Sixth Amendment of the United States Constitution, *Faretta v California*, 422 US 806, 819-820; 95 S Ct 2525; 45 L Ed 2d 562 (1975), and that a defendant may waive his right to counsel, provided he do so "competently and intelligently." *Johnson, supra* at 468. [W]hether there has been an intelligent waiver of the right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background,

_____

[3] 254 Mich App 11, 22; 656 NW2d 817 (2002).

experience, and *conduct* of the accused." *Id.* (emphasis added).

In Michigan, the right to self-representation is secured by both the state constitution and statute.[4] However, this Court has stated that a trial court may only permit a defendant to represent himself if the following requirements have been satisfied: (1) the defendant's request to represent himself has been unequivocal; (2) the defendant has asserted his right of self-representation "knowingly, intelligently, and voluntarily"; (3) the trial court has been satisfied that the defendant, in representing himself, "will not disrupt, unduly inconvenience and burden the court and the administration of the court's business." *People v Anderson*, 398 Mich 361, 367-368; 247 NW2d 857 (1976). Moreover, the trial court

_____

4 Const 1963, art 1, § 13 provides:

A suitor in any court of this state has the right to prosecute or defend his suit, either in his own proper person or by an attorney.

MCL 763.1 provides:

On the trial of every indictment or other criminal accusation, the party accused shall be allowed to be heard by counsel and may defend himself, and he shall have a right to produce witnesses and proofs in his favor, and meet the witnesses who are produced against him face to face.

10

must also satisfy MCR 6.005(D).[5]  *People v Adkins* (*After Remand*), 452 Mich 702, 722; 551 NW2d 108 (1996).  Taken together, the requirements of Michigan law are in accord with the waiver requirements of the federal constitution. See *Iowa v Tovar*, 541 US ___, 124 S Ct 1379, 158 L Ed 2d 209 (2004)("the [federal] constitutional requirement is satisfied when the trial court informs the accused of the nature of the charges against him, of his right to be counseled regarding his plea, and of the range of allowable punishments attendant upon the entry of the guilty plea"); *Faretta, supra* at 835 (holding that, before a defendant may waive his Sixth Amendment right to counsel, a defendant "should be made aware of the dangers and disadvantages of self-representation").

---

[5] MCR 6.005(D) provides, in relevant part:

> The court may not permit the defendant to make an initial waiver of the right to be represented by a lawyer without first
>
> (1) advising the defendant of the charge, the maximum possible prison sentence for the offense, any mandatory minimum sentence required by law, and the risk involved in self representation, and
>
> (2) offering the defendant the opportunity to consult with a retained lawyer or, if the defendant is indigent, the opportunity to consult with an appointed lawyer.

Compliance with these requirements mandates that the trial court "engage, on the record, in a methodical assessment of the wisdom of self-representation by the defendant." *Adkins, supra* at 721. The defendant must exhibit "'an intentional relinquishment or abandonment'" of the right to trial counsel, and the trial court should "'indulge every reasonable presumption against waiver'" of such right. *Id.*, quoting *Johnson, supra* at 464. Further, "'[p]resuming waiver from a silent record is impermissible. The record must show, or there must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandably rejected the offer.'" *Adkins, supra* at 721 (citations omitted).

Defendant asserts that the trial court abused its discretion when it declined defendant's request to appoint him a third attorney, thereby forcing defendant to represent himself. That is, defendant contends that because he did not expressly waive his right to trial counsel, such waiver was, at the very least, equivocal and, therefore, invalid.[6]

---

[6] It was entirely proper for the trial court to require defendant to choose between proceeding to trial with his present attorney and representing himself. See *United States v Grosshans*, 821 F2d 1247, 1251 (CA 6, 1987); *Maynard v Meachum*, 545 F2d 273, 278 (CA 1, 1976).

I disagree. A waiver of a defendant's right to trial counsel must be "unequivocal," A*nderson, supra* at 367, meaning only that such waiver must be "[c]lear; plain; capable of being understood in only one way, or as clearly demonstrated." Black's Law Dictionary (6th ed). I do not accept the standard proposed by defendant and implied by the majority—that only a verbal waiver can sufficiently constitute an "unequivocal" waiver of the right to trial counsel. Neither defendant nor the majority has cited a single state or federal court decision that has adopted such a standard, and I do not believe this standard to be implicit in the requirement of an "unequivocal" waiver.

Here, defendant was offered four options by the trial court in response to his request for a third appointed counsel. Having clearly rejected three of these options, I believe, as a matter of logic, that it can be fairly concluded that defendant "unequivocally" assented to the fourth option. That defendant made clear his displeasure at being limited to these four options does not alter my conclusion. The fact that defendant desired the fifth option of being appointed a third counsel does not transform the trial court's decision to reject such an appointment into an abuse of discretion. See *Mowat v Walsh*, 254 Mich 302, 304; 236 NW 791 (1931); *People v*

13

*Akins*, 259 Mich App 545, 556-557; 675 NW2d 863 (2003). As the majority has correctly noted, "no defendant is entitled to the appointed counselor of his choice." *Ante* at 12-13 n 25. Because there was no abuse of discretion, there was no fifth option. Defendant was properly limited by the trial court to four options, and he clearly rejected three of these.

Concerning the first option, defendant, despite repeated invitations and opportunities to hire his own counsel, failed to do so and expressed no interest in doing so. Concerning the third and fourth options, defendant, as noted earlier, unambiguously, repeatedly, and vehemently refused to have Nunzio represent him. *Supra* at 4-5, 7. The majority would disregard defendant's clear wishes on this point and force defendant to retain Nunzio. *Ante* at 14. In *Faretta, supra* at 820-821, the United States Supreme Court asserted that the Sixth Amendment "right to counsel," does not permit the trial court to appoint counsel that defendant has refused to accept:

> The language and spirit of the Sixth Amendment contemplate that counsel, like the other defense tools guaranteed by the Amendment, shall be an aid to a willing defendant—not an organ of the State interposed between an unwilling defendant and his right to defend himself personally. To thrust counsel upon the accused, against his considered wish, thus violates the logic of the Amendment. In such a

14

case, counsel is not an assistant, but a master; and the right to make a defense is stripped of the personal character upon which the Amendment insists. It is true that when a defendant chooses to have a lawyer manage and present his case, law and tradition may allocate to the counsel the power to make binding decisions of trial strategy in many areas. . . . This allocation can only be justified, however, by the defendant's consent, at the outset, and to accept counsel as his representative. An unwanted counsel "represents" the defendant only through a tenuous and unacceptable legal fiction. Unless the accused has acquiesced in such representation, the defense presented is not the defense guaranteed him by the Constitution, for, in a very real sense, it is not *his* defense. [Emphasis in original.]

*Faretta* continued by stating, "no State or Colony had ever forced counsel upon an accused; no spokesman had ever suggested that such a practice would be tolerable, much less advisable." *Id*. at 832. The Court then observed:

There can be no blinking at the fact that the right of an accused to conduct his own defense seems to cut against the grain of this Court's decisions holding that the Constitution requires that no accused can be convicted and imprisoned unless he has been accorded the right to the assistance of counsel. See *Powell v Alabama*, 287 US 45 [53 S Ct 55; 77 L Ed 158 (1932)]; *Johnson v Zerbst*, 304 US 458 [58 S Ct 1019; 82 L Ed 1461 (1938)]; *Gideon v Wainwright*, 372 US 335 [83 S Ct 792; 9 L Ed 2d 799 (1963); *Argersinger v Hamlin*, 407 US 25 [92 S Ct 2006; 32 L Ed 2d 530 (1972)]. For it is surely true that the basic thesis of those decisions is that the help of a lawyer is essential to assure the defendant a fair trial. And a strong argument can surely be made that the whole thrust of those decisions must inevitably lead to the conclusion that a State may constitutionally impose a lawyer upon even an unwilling defendant.

15

But it is one thing to hold that every defendant, rich or poor, has the right to the assistance of counsel, and quite another to say that a State may compel a defendant to accept a lawyer he does not want. The value of state-appointed counsel was not unappreciated by the Founders, yet the notion of compulsory counsel was utterly foreign to them.

* * *

To force a lawyer on a defendant can only lead him to believe that the law contrives against him. [*Id.* at 832-834.]

Moreover, in his concurrence in *Martinez v Court of Appeals of California*, 528 US 152, 165; 120 S Ct 684; 145 L Ed 2d 597 (2000), Justice Scalia noted:

I have no doubt that the Framers of our Constitution, who were suspicious enough of governmental power—including judicial power—that they insisted upon a citizen's right to be judged by an independent jury of private citizens, would not have found acceptable the compulsory assignment of counsel by the *Government* to plead a criminal defendant's case.

That asserting the right of self-representation may often, or even usually, work to the defendant's disadvantage is no more remarkable—and no more a basis for withdrawing the right—than is the fact that proceeding without counsel in a custodial interrogation, or confessing to the crime, usually works to the defendant's disadvantage. Our system of laws generally presumes that the criminal defendant, after being fully informed, knows his own best interests and does not need them dictated by the State. Any other approach is unworthy of a free people. As Justice Frankfurter eloquently put it for the Court in *Adams v United States ex rel. McCann*, 317 US 269, 280 [63 S Ct 236; 87 L Ed 268] (1942), to require the acceptance of counsel

16

> "is to imprison a man in his privileges and call it the Constitution."

Thus, after defendant told the trial court that he no longer wanted Nunzio to represent him, the trial court did not have the authority to force defendant to be represented by Nunzio.[7] Accordingly, I question the basis on which the majority asserts that "the trial court should have simply denied defendant's request to appoint another counsel and continued with the proceedings." *Ante* at 14, n 27.[8] Under *Faretta*, this type of action by the trial court would seemingly have violated defendant's Sixth Amendment right

---

[7] In response to the majority's assertion that, "[u]nder the theory advocated by the dissent, if a defendant were to insist on empanelling only left-handed jurors, his insistence would constitute an affirmative waiver of his right to a jury trial *even* if he explicitly indicates that he *desires* a jury trial," *ante* at 13, I simply note that, while a defendant *does* have a constitutional right not to be represented by counsel he does not want, *Faretta, supra* at 833, a defendant does *not* have a constitutional right to empanel "only left-handed jurors." Accordingly, I find the majority's example unhelpful in resolving the constitutional issue raised in this case.

[8] It appears to me that the majority's "practical, salutary tool" of thrusting unwanted counsel onto a defendant is at least arguably in contravention of *Faretta*. *Ante* at 11. The majority focuses on only a single sentence in that case, *ante* at 7, n 12, while ignoring the general rule repeatedly set forth in *Faretta* that it is a violation of a defendant's Sixth Amendment right to trial counsel to "compel a defendant to accept a lawyer he does not want." *Supra* at 833.

to trial counsel and presumably provided a basis for a new trial.

Thus, in light of *Faretta*, the only remaining option, and this was made abundantly clear to defendant, was the second option. That defendant did not expressly assent to this option is not dispositive of his choice—for such an option is all that remained available to him.[9] The majority's decision to require a defendant under circumstances such as these to *expressly* assent to self-representation is either to ensure that a "no decision" impasse develops in the event that a defendant refuses to give an express assent, or to unwarrantedly pressure the trial court into disregarding its own judgment—appointing new trial counsel where it is not viewed as necessary—and enduring the necessary trial delays as new counsel orients himself.

---

[9] To further support my assertion that defendant unequivocally waived his right to trial counsel, I note that defendant did not contradict Nunzio, who, after meeting with defendant during an hour-and-a-half recess, told the trial court, "I believe Mr. Russell still contends he wishes to represent himself." If, as the majority asserts, defendant "consistently denied that his choice was self-representation," *ante* at 12, I question why defendant, who was decidedly vocal in expressing any disagreements that he had during trial proceedings, did not challenge the truth of this statement by Nunzio. From this, I can only surmise that Nunzio correctly characterized defendant's wishes.

That is, the majority's decision requires the trial court to exercise its discretion in accord with defendant's own preferences and to compel the trial court to grant him a third appointed counsel.  But the question of such an exercise of discretion is a distinct question from whether the trial court has complied with its obligations in permitting a defendant to proceed to trial by self-representation.  Because I believe that there has been no abuse of discretion by the trial court in rejecting defendant's application for a third appointed counsel, defendant has no right to such counsel.  He has a right only to the four options identified by the trial court.

The upshot of the majority's decision, in my judgment, is that it undermines the administration of justice by encouraging gamesmanship in the courtroom by criminal defendants, making more readily available an appellate parachute for appellants, and frustrating the orderly progress of trial proceedings.  As this Court has previously observed:

> The Court recognizes and sympathizes with the "Catch 22" judges face in the waiver of counsel setting.  On the one hand, defendants have a right to counsel.  On the other hand, defendants have a right to self-representation. We realize the potential for savvy defendants to use these competing rights as a means of securing an appellate parachute. [*Adkins, supra* at 724.]

19

Although a defendant's rights to trial counsel and to self-representation are intertwined, defendant here would ensure that these rights increasingly take on a "zero sum" relationship in which either the former or the latter right is necessarily violated, and in which one or the other becomes a potential basis for appellate reversal. This becomes more likely when formalisms (such as the majority's unfounded requirement that a waiver only be effected by verbal statement) come to prevail over an inquiry into the totality of circumstances, including both the verbal statements and the conduct of the defendant.

Under the circumstances of this case, I would find that defendant, by his conduct alone, unequivocally waived his right to trial counsel. Given defendant's knowledge that the trial court was unprepared to appoint new counsel and defendant's clear rejection of three of the four options offered to him by the trial court, I believe that these circumstances, which do not include a verbal statement of assent to self-representation, sufficiently give rise to an "unequivocal" waiver of his right to trial counsel.

Because of the disadvantages that inure from self-representation, a defendant must also "knowingly [and] intelligently" waive his right to trial counsel. *Anderson,*

*supra* at 368.  To satisfy this requirement, the trial court must ensure that a defendant has been "made sufficiently aware of his right to have counsel" and "of the possible consequences of a decision to forgo the aid of counsel" so that his choice "'is made with eyes open.'"  *Patterson v Illinois*, 487 US 285, 292-293; 108 S Ct 2389; 101 L Ed 2d 261 (1988)(citations omitted); see also *Anderson, supra* at 368, 370-371.  "The trial judge is in the best position to determine whether the defendant has made the waiver knowingly . . . ."  *Adkins, supra* at 723 (citation omitted).  In this case, the trial court engaged in a lengthy and methodical colloquy, over thirty-five pages long, explicitly warning defendant of the dangers of self-representation.  Among other warnings, the trial court counseled that, "unless you are legally trained,. . . there are many pitfalls there for the unwary," and "I'm suggesting that you don't know legal procedure."  The trial court also advised defendant as follows:

> I should advise you that there is an ancient adage in the law, for good reason, that a man who acts as his own counsel has a fool for a client. The corollary to the rule is that he also has a fool for a lawyer, but, as a practical matter, it all winds up in the same place.

> My guess is that you will not fare well in that approach, but you have a right to take that approach if you wish to do it.  And, while I would not advise it, I will certainly guard your

21

> rights and see to it that you have the opportunity to present your own defense, if that's your wish.

Further, the trial court repeatedly warned defendant that if Nunzio were removed, new trial counsel would not be appointed. Finally, the trial court gave defendant numerous opportunities, including two separate recesses, to consult with Nunzio concerning defendant's four options. Accordingly, I am convinced, as was the trial court, that under the circumstances of this case, there is no question that defendant was provided with sufficient information to make a decision with "eyes wide open." Thus, I would hold that the trial court did not err in finding that defendant "knowingly and intelligently" waived his right to trial counsel when he repeatedly informed the trial court that he no longer wanted Nunzio to represent him.

A defendant's waiver of his right to trial counsel must also be voluntary. *Anderson, supra* at 371. "The trial judge is in the best position to determine whether the defendant has made the waiver . . . voluntary." *Adkins, supra* at 723 (citation omitted). Substitution of counsel is a matter committed to the sound discretion of the trial court. *People v Williams*, 386 Mich 565, 578; 194 NW2d 337 (1972). "While a defendant may not be forced to proceed to trial with incompetent or unprepared counsel,

22

. . . a refusal without good cause to proceed with able counsel is a 'voluntary' waiver." *Maynard v Meachum,* 545 F2d 273, 278 (CA 1, 1976). See also *United States v Harris*, 2 F3d 1452, 1455 (CA 7, 1993)(finding a voluntary and informed waiver where the defendant refused to cooperate with his lawyers and was told that no substitute counsel would be appointed for him); *United States v Kneeland,* 148 F3d 6, 12 (CA 1, 1998)(a waiver of the right to trial counsel must be considered involuntary if defendant had a valid reason for requesting the appointment of new trial counsel).

In *United States v Moore,* 706 F2d 538 (CA 5, 1983), the trial court required the defendant to proceed pro se after he rejected several court-appointed attorneys. Like the instant defendant, the defendant in *Moore* made statements on the record that he was not waiving his right to trial counsel, but that he simply wanted different trial counsel. Defendant was convicted and appealed his conviction on this basis.

The Fifth Circuit Court of Appeals affirmed the defendant's conviction, stating:

> [Defendant] refers to a statement by the trial court which indicates that the court knew [defendant] was not waiving his right to counsel. This misperceives the record. Viewed in the context of the entire dialogue, the trial court

23

was noting its awareness that [defendant] was not waiving his demand for dismissal of his current attorney and appointment of another. That demand is precisely the issue herein presented: may a defendant repeatedly demand that his appointed counsel be relieved and that new counsel be appointed and, if the request is denied, contend that his sixth amendment right to counsel . . . has been violated? We answer that inquiry in the negative.

We conclude that a persistent, unreasonable demand for dismissal of counsel and appointment of new counsel, as herein discussed, is the functional equivalent of a knowing and voluntary waiver of counsel. In such an instance the trial court may proceed to trial with the defendant representing himself. [*Id.* at 540.]

Similarly, in *United States v Fazzini*, 871 F2d 635 (CA 7, 1989), the defendant sought to remove his fourth court-appointed attorney. In allowing defendant to dismiss his latest attorney, the trial court "expressly found that defendant, through his actions, had knowingly and voluntarily waived the right to counsel." *Id*. at 642. During trial, the defendant claimed that he was being "forced" to proceed pro se, and continually expressed a desire for new counsel to be appointed.

Defendant was ultimately convicted. The Fourth Circuit Court of Appeals affirmed his conviction, stating:

In this case, the defendant claims that he did not knowingly and intentionally waive his right to appointed counsel since he continued to ask for counsel even after Kling was excused from the case. Yet it is not necessary that a defendant verbally waive his right to counsel; so

> long as the district court has given the defendant sufficient opportunity to retain the assistance of appointed counsel, defendant's actions which have the effect of depriving himself of appointed counsel will establish a knowing and intentional choice. [*Id.*]

The instant defendant was essentially given only two viable options—continue with court-appointed counsel or continue without court-appointed counsel. Defendant made it abundantly clear that he would not be cooperating with his current counsel, and therefore, I believe, that he effectively chose to proceed pro se. Like the defendant in *Fazzini,* the instant defendant denied that he was making this choice. Nevertheless, the vehement negation of one choice—to proceed with his current counsel—constituted the acceptance of the only remaining option available—to proceed pro se.

I agree with the lower courts and believe that defendant consistently failed to assert a valid reason to have new court-appointed counsel, and thus voluntarily waived his right to trial counsel. The trial court asserted that "Mr. Nunzio is a man of considerable professional ability," with an extensive history of trial work, and is an "extremely capable" and "well-respected" defense attorney. Further, Nunzio himself apprised the trial court:

> Your honor, I am prepared to try the case. I am not only familiar with all the issues surrounding this case, but I have dealt with these cases numerous times in the last number of years. And I have communicated all of those relevant issues that I have explored. The discovery is complete. I've had the opportunity to look at discovery. I talked to the prosecutor in this case regarding this case. I am more than capable at this point in time trying the case
>
> * * *
>
> But counsel is ready to proceed to trial at this point in time.

Later, after defendant asserted "that Mr. Nunzio is not representing me in a proper[] fashion," the trial court responded, "I don't see that. I see no indication that Mr. Nunzio has done anything wrong at all." I agree with the trial court and the Court of Appeals and find no evidence in the record to suggest that Nunzio's representation of defendant "fell below an objective standard of reasonableness . . . ." *People v Gonzalez*, 468 Mich 636, 644; 664 NW2d 159 (2003). Nor does defendant present any evidence to the contrary. Because I believe that this Court should follow federal precedent, holding that an unreasonable insistence on the appointment of a new attorney operates as a waiver of the right to counsel, and

26

that defendant's protests to the contrary do not render that waiver ambiguous, I dissent.[10]

To constitute a valid waiver of the right to trial counsel, the trial court must also be satisfied that in representing himself, defendant "will not disrupt, unduly inconvenience and burden the court and the administration of the court's business." *Anderson, supra* at 368. Because the trial court, in fact, allowed defendant to represent himself, I would hold that the trial court was persuaded that defendant, in representing himself, would not disrupt or otherwise inconvenience or burden the court and, thus, fulfilled the third requirement of *Anderson*.

Further, although the requirements in *Anderson* have been satisfied, the trial court must "substantially comply" with MCR 6.005(D) for a valid waiver to occur. *Adkins, supra* at 726. "A particular court's method of inquiring into and satisfying these concepts is decidedly up to it, as long as the concepts in these requirements are covered."

---

[10] As the majority correctly notes, the Supreme Court stated in *Martinez* that "the right to self-representation is not absolute" in that the defendant must choose self-representation voluntarily and intelligently. *Ante* at 8. *Cf. Caplin & Drysdale v United States,* 491 US 617, 651; 109 S Ct 2646; 105 L Ed 2d 528 (1989); *Arizona v Roberson*, 486 US 675, 686; 108 S Ct 2093; 100 L Ed 2d 704 (1988)(holding that even the constitutional right to counsel is not absolute.)

27

*Id*. at 725.  I would hold that MCR 6.005(D) was satisfied here because defendant was fully advised of the nature of the charges against him and the possible punishments in the information,[11] and of the risks involved in self-representation.[12]

Finally, the court should "indulge every *reasonable* presumption [de-italicize presumption] against waiver" of a defendant's right to trial counsel.  *Adkins, supra* at 721 (citation omitted) (emphasis added).  "'The record must show, or there must be an allegation and evidence which

---

[11] At the outset of the trial, the court stated:

> Mr. Russell is here for trial today on charges of possession with intent to deliver less than 50 grams of cocaine, possession with intent to deliver less than 50 grams of heroin, and he is also charged as a fourth felony habitual offender.

See *Adkins, supra* at 730-731 (holding that the trial court had satisfied the requirement of MCR 6.005(D) that defendant be advised of the maximum and minimum sentences because "the judge had already expressed the nature of the charge and possible punishments to the defendant at his arraignment").

[12] "A particular court's method of inquiring into and satisfying [MCR 6.005(D)] is decidedly up to it, as long as [the proper] concepts . . . [are] covered." *Adkins, supra* at 725.  Because the trial court counseled defendant that, "unless you are legally trained, . . . there are many pitfalls there for the unwary," we believe that its warning satisfied the requirement of MCR 6.005(D) that the trial court advise defendant of "the risks involved in self representation . . . ."

show, that an accused was offered counsel but intelligently and understandably rejected the offer. Anything less is not waiver.'" *Adkins, supra* at 721 (citations omitted). As previously discussed, defendant here intelligently waived his right to trial counsel by repeatedly stating that he did not want Nunzio to represent him. [13]

"The determination of whether there has been an intelligent waiver of the right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including [the] *conduct of the accused." Johnson, supra* at 464 (emphasis added). I would conclude that defendant's conduct, under the circumstances of this case—his informed and unequivocal refusal to accept *any* of the other three options offered to him by the trial court—constituted an acceptance of the only remaining option, and that defendant thereby "intentional[ly] relinquish[ed] or abandon[ed]" his right to trial counsel. *Id.*

---

[13] Defendant made the following statements concerning his desire that Nunzio not represent him: (1) "I don't-- I don't want any contact with Mr. Nunzio, and I expressed that to you. I don't want Mr. Nunzio to have anything to do with anything in my case"; (2) "There is no way that I will let him try to defend me . . . [T]here's no way that I would feel comfortable with him having anything to do with the defense on my behalf"; and (3) "I don't want Mr. Nunzio involving in nothing of my defense."

### III. Conclusion

I believe that defendant, by his conduct alone, unequivocally waived his constitutional and statutory right to trial counsel. Further, I believe that defendant's waiver satisfied the requirements of *Anderson* and MCR 6.005(D). Accordingly, I would hold that defendant waived his right to trial counsel and thus affirm the judgment of the Court of Appeals.

Stephen J. Markman
Maura D. Corrigan